**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LABORERS' PENSION FUND and** | ) | |
| **LABORERS' WELFARE FUND OF THE** | ) | |
| **HEALTH AND WELFARE DEPARTMENT** | ) | |
| **OF THE CONSTRUCTION AND GENERAL** | ) | |
| **LABORERS' DISTRICT COUNCIL OF** | ) | |
| **CHICAGO AND VICINITY, JAMES S.** | ) | |
| **JORGENSEN, Administrator of the Funds,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 08 C 4005** |
| | ) | |
| **ANGEL CLEANING SERVICE** | ) | **Judge Conlon** |
| **and MARIA R. SCOTT, doing business as** | ) | |
| **ANGEL CLEANING SERVICE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' MOTION FOR DEFAULT AND TO COMPEL AN AUDIT**

Plaintiffs, Laborers' Pension Fund and Welfare Fund of the Health and Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively the "Funds"), and plaintiff James S. Jorgensen ("Jorgensen"), Administrator of the Funds, by their undersigned attorneys, state:

1.      On July 15, 2008, plaintiffs filed a complaint under Section 301(a), Labor Management Relations Act, 29 U.S.C. §185(a), as amended, and Section 502(a)(3) of the Employee Retirement Income Security Act, 29 U.S.C. §1132(a)(3), as amended, alleging that at all material times defendant Angel Cleaning Service ("the Company") had an obligation arising from a collective bargaining agreement to report and pay contributions to plaintiff Funds, to submit to an audit upon demand and to obtain and maintain a surety bond.  In this Complaint, plaintiffs have specifically alleged that the Company failed to produce books and records for an audit covering the period from

April 2008 to the present. Maria Scott, Company president, is sued in her personal capacity because she is operating a dissolved company.

2.      Service of the Complaint on the Company was accomplished at 10:50 a.m. on July 29, 2008, by special process server, Barry A. Savage, by handing a copy of the summons and complaint to Maria Scott, who is the registered agent for the Company, at 8715 South Bennett, Chicago, Illinois. (See, Return of Service [Docket No. 10].)

3.      Service of the Complaint on Maria Scott was accomplished at 10:50 a.m. on July 29, 2008, by special process server, Barry A. Savage, by handing a copy of the summons and complaint to Maria Scott, personally, at 8715 South Bennett, Chicago, Illinois. (See, Return of Service [Docket No. 11].)

4.      Twenty days have lapsed since each defendant was served with summons and complaint, and neither defendant has served an answer.

5.      The Company signed an Independent Construction Industry Collective Bargaining Agreement (the "Agreement") with the Construction & General Laborers' District Council, which was attached to the Complaint as Exhibit A. The Agreement binds the defendants to the master agreements and Trust Agreements which are adopted in the one page collective bargaining agreement.

6.      The bargaining agreement and Trust Agreements require the defendants to make books and records available for an audit. The Pension Trust Agreement provides that "Trustees may at any time have an audit made by an independent certified public accountant or its representative of the payroll of any Employer in connection with the said contributions and/or reports." The Funds' policy is attached hereto which describes the records required for an audit by the Laborers' Funds.

(Exhibit A.)

7.      Plaintiffs are requesting the Company's books and records for the period from April 2008 through the present to conduct an audit. Addendum A to the Pension Trust Agreement reflects the books and records necessary for this review. (Exhibit A.) This list is also incorporated into the Proposed Order.

WHEREFORE, plaintiffs request entry an order (1) finding defendants Angel Cleaning Service and Maria Scott in default; and (2) requiring defendant Angel Cleaning Service, through its president, Maria Scott, to produce records to the Funds' auditors. Production may be arranged by contacting Funds' counsel, Josiah A. Groff at (312) 364-9400.

Respectfully submitted,

/s/ Josiah A. Groff
One of plaintiffs' attorneys

ALLISON, SLUTSKY & KENNEDY
230 West Monroe Street
Suite 2600
Chicago, IL 60606
(312) 364-9400

August 19, 2008

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR RETENTION AND PRODUCTION OF EMPLOYER RECORDS

As Adopted by the Boards of Trustees
Effective as of April 1, 2006

WHEREAS, Section 209 of the Employee Retirement Income Security Act of 1974 , as amended ("ERISA"), 29 U.S.C. Section1059, requires employers obligated to contribute to employee benefit funds to maintain records with respect to its employees which are sufficient to determine benefits due to such employees of which may become due to them; and

WHEREAS, the Trustees of the Laborers' Pension Fund and the Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds") have the authority under their respective Trust Agreements to establish rules, regulations and policies regarding records which must be maintained by employers in order to administer the Benefit Funds; and

WHEREAS, the Trustees of the Benefit Funds have found that most contributing employers maintain proper records and make all required contributions to the Benefit Funds, nevertheless, there are employers who are bound by the Trust Agreements of the Benefit Funds who fail to maintain records which are adequate for the Funds to determine whether proper contributions have been made on behalf of eligible employees and that some of such employers do so deliberately in order to avoid their obligations to make such payments; and

WHEREAS, the practices of employers who fail to maintain records sufficient to enable the Benefit Funds to conduct thorough payroll audits cause their employees to lose valuable pension and welfare benefits and cause the Benefit Funds to lose contractually required contributions and investment earnings on those contributions; and

WHEREAS, the practices of employers who fail to maintain adequate records cause the Benefit Funds to incur substantial additional administrative and legal expenses in order to determine proper amounts owed to the Funds by such employers; and

WHEREAS, enforcement of a policy specifying the records required to be maintained and produced increases the ability of the Funds to prove the contributions owed by delinquent employers and thereby to provide proper credit to the employees and their beneficiaries;

NOW THEREFORE, the Trustees resolve that the following policies are adopted by the Benefit Funds effective as of March 1, 2002:

**Exhibit A**

1. Except as otherwise provided herein, all contributing employers to the Benefit Funds shall maintain and make available for inspection and copying by an auditor of the Benefit Funds the records listed on Appendix A, attached hereto.

2. Any employer obligated to contribute to the Benefit Funds who fails to maintain and make available for inspection and copying to an auditor of the Benefit Funds the requisite records listed on Appendix A shall bear the burden of proof with respect to the exclusion of any employee from coverage by the collective bargaining agreement with the Union. In those cases where an employer asserts that an employee is excluded because he/she is a member of another bargaining unit, the employer must submit tangible evidence of that fact, e.g., a union membership card, contribution records maintained for the benefit funds of the other bargaining unit, commercial drivers' license if it is asserted that an employee is a truck driver rather than a laborer and workers' compensation policies, forms and applications listing an employee's job classification or other business records. The affidavit of an employer's representative or officer unsupported by documentary evidence shall not be sufficient to meet the employer's burden of proof. Affidavits solicited and obtained ex parte by an employer's representative from employees, for which there is no corroborative evidence in the form of records maintained in the ordinary course of business, shall not be sufficient to meet the employer's burden of proof.

3. When an employer has failed to maintain or make available the requisite records, there shall be a rebuttable presumption that any employee listed as a possible laborer by an auditor, Field Representative or attorney representing the Benefit Funds was a laborer. There shall also be rebuttable presumptions concerning the hourly rate and number of hours worked as follows: (a) that the employee was paid only $10.00 per hour if no record of wage rates was made by the employer, and/or (b) that the employee worked 72 hours per week if no record of the number of hours was maintained; whichever of these presumptions results in the higher amount of contributions shall be applied. When evidence exists that a different hourly rate was paid to employees of an employer that failed to maintain the required records, at the discretion of the Director of the Field Department, a different hourly rate may be presumed for purposes of determining the amount of contributions owed by the employer. If that evidence shows that the employer paid a rate lower than $10.00 per hour to any employees doing bargaining unit work, then that lower rate shall be presumed to be the actual rate paid to all employees for whom adequate records were not kept. Similarly, where evidence exists of a different number of hours worked, the Director may apply a different number of hours for determining the contributions owed, and this number of hours worked shall be presumed correct. All wages computed as provided in this paragraph shall be presumed to be paid as straight time wages regardless of the number of hours worked unless the employer has provided documentation, in the form required by the terms of this policy, showing that it followed the requirements of the Fair Labor Standards Act and/or the applicable collective bargaining agreement as to the payment of overtime.

4. An employer that fails to maintain the requisite records and fails to cooperate with the Trustees in establishing the paid wage rates, actual hours of work and contributions owed to the Benefit Funds shall be liable to the Benefit Funds and any related organizations, for the contribution amounts determined as provided herein and also for 20% liquidated damages, compound interest at the rate of prime plus 2 points (as determined by the Administrator), auditor's and attorney's fees and any other expenses of collection including investigative costs.

2

ADDENDUM A

## RECORDS REQUIRED TO BE RETAINED BY EMPLOYERS AND PRODUCED FOR AUDITS

The following records shall be maintained and retained by all contributing employers to the Benefit Funds for at least six years from the contribution date and shall be produced for inspection and copying by an auditor of the Benefit Funds upon written request:

1. Quarterly and annual payroll tax returns, including, but not limited to, federal quarterly form 941's, federal annual form W-2's, W-3's, 940's, 1099's and state quarterly unemployment returns (form UC-3).

2. Payroll journals and/or registers which include or identify employees' social security numbers, hourly rates of pay, hours worked and the time period in which the work was performed.

3. Individual earnings records for all employees of the employer not shown on payroll journals or registers, including social security number and work classification (or code or clock or ID number), hourly rates of pay, hours worked and the time period in which the work was performed.

4. Cash disbursement journals and general ledgers.

5. Copies of all contribution reports and proof of payment (canceled checks or records of canceled checks) of all contributions to the Laborers' Funds and to all other trade union fringe benefit funds to which the employer contributed.

6. Copies of all dues records and proof of payment (canceled checks or records of canceled checks) of all union dues submitted to the Laborers' District Council.

7. Records showing all amounts paid to all persons or entities that performed work for the employer as independent contractors or subcontractors, if any, including copies of any federal form 1099's issued by the employer.

8. Daily time records filed by employees or supervisors.

9. Source documents and lists of job codes and equipment codes.

10. Certified payrolls for public sector jobs where such payrolls are required.

11. Employee personnel files including, but not limited to, last known addresses and telephone numbers, any documents which demonstrate employees' job classifications and/or status as an apprentice, journeyman, foreman, superintendent, or supervisor. (Confidential medical records or other private records not relevant to the establishment of an employee's job classification shall not be disclosed.)

1

12. Bank account statements and canceled checks from any account used in conjunction with the employer's business.

13. If records of all hours worked, rates of pay and classifications are not provided in the records listed in items 1 through 10, the employer shall maintain monthly lists of all employees not shown on payroll records, showing Social Security number and work classification (or code or clock or ID number), rates of pay and hours worked.

Honor Roll Employers shall be required only to produce basic records needed by the Benefit Funds' auditors to do an audit, specifically items 1 through 7 above. However, if an initial examination of such limited records discloses significant record keeping errors or failures to contribute, the auditor may request additional records listed above. In the absence of evidence of a deliberate failure by an Honor Roll Employer to contribute on behalf of a bargaining unit employee, the rebuttable presumptions provided for in the attached Policy for Retention and Production of Employer Records shall not apply to such Honor Roll Employer.

Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced. The judgment of the trustees in interpreting and applying this policy shall be conclusive and binding on all parties.

Adopted January 9, 2002

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LABORERS' PENSION FUND and | ) | |
| LABORERS' WELFARE FUND OF THE | ) | |
| HEALTH AND WELFARE DEPARTMENT | ) | |
| OF THE CONSTRUCTION AND GENERAL | ) | |
| LABORERS' DISTRICT COUNCIL OF | ) | |
| CHICAGO AND VICINITY, JAMES S. | ) | |
| JORGENSEN, Administrator of the Funds, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 08 C 4005 |
| | ) | |
| ANGEL CLEANING SERVICE | ) | Judge Conlon |
| and MARIA R. SCOTT, doing business as | ) | |
| ANGEL CLEANING SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This cause coming to be heard before the Court on the plaintiffs' Motion for Default and to

Compel an Audit; due notice having been given to the defendants; and the Court being fully advised

in the premises to the following:

**IT IS HEREBY ORDERED:**

1.      Defendants Angel Cleaning Service and Maria Scott are in default.

2.      Defendant Angel Cleaning Service, through its president Maria Scott, is obligated to

submit reporting information for the period from April 2008 through the present.  Defendant Angel

Cleaning Service, through its president Maria Scott, shall produce the following books and records

within ten days of service of this Order to the Funds' designated auditors by contacting Funds'

counsel Josiah A. Groff at Allison, Slutsky & Kennedy, P.C., (312) 364-9400:

       1.      Quarterly and annual payroll tax returns, including, but not limited to,

federal quarterly form 941's, federal annual form W-2s, W-3s, 940s, 1099s and state quarterly unemployment returns (form UC-3).

2.  Payroll journals and/or registers which include or identify employees' social security numbers, hourly rates of pay, hours worked and the time period in which the work was performed.

3.  Individual earnings records for all employees of the employer not shown on payroll journals or registers, including social security numbers and work classifications (or code or clock or ID number), hourly rates of pay, hours worked and the time period in which the work was performed.

4.  Cash disbursement journals and general ledgers.

5.  Copies of all contribution reports and proof of payment (canceled checks or records of canceled checks) of all contributions to the Laborers' Funds and to all other trade union fringe benefit funds to which the employer contributed.

6.  Copies of all dues records and proof of payment (canceled checks or records of canceled checks) of all union dues submitted to the Laborers' District Council.

7.  Records showing all amounts paid to all persons or entities that performed work for the employer as independent contractors or subcontractors, if any, including copies of any federal form 1099's issued by the employer.

8.  Daily time records filed by employees or supervisors.

9.  Source documents and lists of job codes and equipment codes.

10. Certified payrolls for public sector jobs where such payrolls are required.

11. Employee personnel files including, but not limited to, last known addresses and telephone numbers, any documents which demonstrate employees' job classifications and/or status as an apprentice, journeyman, foreman, superintendent, or supervisor, (confidential medical records or other private records not relevant to the establishment of an employee's job classification shall not be disclosed.)

2

12.   Bank account statements and canceled checks from any account used in conjunction with the employer's business.

13.   Records of all hours worked, rates of pay and classifications are not provided in the records listed in items 1 through 10, the employer shall maintain monthly lists of all employees not shown on payroll records, showing social security numbers and work classifications (or code or clock or ID number), rates of pay and hours worked.

3.   Defendant Angel Cleaning Service, through its president Maria Scott, shall permit plaintiffs' auditors access to the books and records at a mutually convenient time and place.  To comply with this order, Maria Scott shall contact plaintiffs' counsel, Josiah A. Groff, at Allison, Slutsky & Kennedy, P.C., 230 W. Monroe Street, Suite 2600, Chicago, IL 60606 at (312) 364-9400 to arrange a time for plaintiffs' auditors to review the defendants' documents within ten days of service of this order.

**E N T E R E D**

_____
**UNITED STATES DISTRICT COURT**

**Dated: _____**